IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ALLIED WORLD SPECIALTY INSURANCE COMPANY, | |
| Plaintiff, | 8:16CV545 |
| vs. | MEMORANDUM AND ORDER |
| ABAT LEREW CONSTRUCTION, LLC, ABAT LEREW, LLC, MICHAEL R. FORD, and NOEL A. FORD, | |
| Defendants. | |

This matter is before the court on the plaintiff Allied World Specialty Insurance Company's ("Allied") motion for a preliminary injunction, Filing No. 2. This is an action on an indemnity agreement. Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332.

**I. BACKGROUND**

In its complaint, Allied asserts claims for breach of contract, specific performance, and exoneration and *quia timet*.[1] It seeks specific performance of the Indemnitors' (ALC's) obligation to deposit collateral security in an amount sufficient to discharge the claims that have been asserted against Allied on a payment and performance surety bond. Defendants Abat Lerew Construction, LLC, Abat Lerew, LLC,

---

[1] "Literally meaning 'because he fears,' *quia timet* is '[a] legal doctrine that allows a person to seek equitable relief from a future probable harm to a specific right or interest.'" *Pennsylvania Nat. Mut. Cas. Ins. Co. v. City of Pine Bluff*, 354 F.3d 945, 950 n.4 (8th Cir. 2004). "'*Quia timet* is the right of a surety to demand that the principal place the surety "in funds" when there are reasonable grounds to believe that the surety will suffer a loss in the future because the principal is likely to default on its primary obligation to the creditor.'" *In re Farmland Indus., Inc.*, 296 B.R. 793, 797 n.1 (B.A.P. 8th Cir. 2003) (quoting *Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 32 (2d Cir. 1991)). "Exoneration, though closely related, is distinct. It is the surety's right, after the principal's debt has matured, to compel the principal to honor its obligation to the creditor." *Id.* (quoting *Borey*, 934 F.2d at 32-33).

Michael R. Ford, and Noel A. Ford (collectively, "ALC") generally deny the plaintiff's allegations and assert equitable defenses of estoppel and unclean hands. ALC also affirmatively alleges that Allied has breached its obligation of good faith and fair dealing. Further, it alleges that portions of the Indemnity Agreement are void as against public policy or otherwise legally unenforceable.

ALC is a general contractor. It entered into ten public construction contracts to perform general contracting services for various projects and obtained payment and performance surety bonds from Allied. Eight of the ten projects have been completed and two are temporarily shut down due to seasonal conditions. ALC and Allied also entered into an indemnity agreement.

In its complaint, Allied states that, in accordance with the law and contracts for the projects, it issued, as surety, Payment Bond and Performance Bond No. S001-2203 in the maximum penal sum of $1,677,772 on behalf of ALC, as principal, and naming the United States of America as the Obligee (the "Bond"). Filing No. 1, Complaint at 2-3. It alleges it has received bond claims for over $300,000. *Id.* at 4. On November 15, 2016, it demanded that ALC provide $400,000 in collateral security pursuant to the Agreement of Indemnity. *Id.* The indemnity agreement obligates ALC

> to indemnify and to hold the Surety harmless from and against any and all liability for any and all Loss, and in such connection, Indemnitors will pay the Surety for all Losses specified or otherwise described in Surety's notice, no later than close of business on the Due Date with respect to such notice, whether or not the Surety has actually made any payment thereon as of such Due Date.

Filing No. 1-1, Complaint, Ex. A, Indemnity Agreement at 3. The Indemnity Agreement further requires ALC "to deposit with [Allied] as collateral, by the Due Date and after

receipt of [Allied's] written demand, the sum equal to an amount determined by [Allied], to cover liability for Loss . . . as determined by [Allied]." Filing No. 1-1, Complaint, Ex. A.

Allied seeks an injunction ordering ALC to post collateral security with Allied World in the amount of $400,000, enjoining and restraining ALC from selling, transferring, disposing of or liening their assets and property, granting a lien on ALC's property until such collateral is deposited, requiring ALC to indemnify and exonerate Allied for all liabilities, losses, and expenses incurred by Allied World as a result of Allied World having executed the Bonds, and providing Allied access to ALC's books and records. It also seeks an order requiring ALC to pay Allied's reasonable attorneys' fees and costs.

In support of its motion, Allied submits the bond, the indemnity agreement, its demand for collateral, and the affidavit of James A. Keating, Assistant Vice President of Surety Claims for Allied ("Keating Aff."). Filing No. 4, Index of Evid., Exs. 1-4. Keating states that Allied has received claims on the bond and is investigating them in order to discharge its obligations. Filing No. 4-4, Keating Aff. at 5. He also states Allied has incurred and continues to incur attorney fees, costs, and expenses associated with the investigation and litigation of the Bond Claims. *Id.* at 6 Further, he states that Allied has made a demand on ALC for collateral security under the indemnity agreement, but "the Indemnitors have failed, despite [Allied's] demand, to fully and satisfactorily respond to and resolve the pending Bond claims, indemnify or exonerate [Allied], and post collateral." *Id.*

In response to Allied's motion for a preliminary injunction, ALC challenges at least one of the bond claims as wholly without merit and asserts that it has not received

3

final payment on one of the projects because Allied has wrongfully refused to provide its consent. Filing No. 25-1, Declaration of Michael D. Ford at 2-3. Ford states ALC is making every effort to resolve the bond claims in order to fully perform its legitimate obligations under the indemnity agreement. *Id.* at 3-4. Ford contends Allied has not paid on the bond claims and any harm to Allied is speculative at this point. *Id.* at 4. Further, Ford states that the defendants are not absconding with money or transferring, disposing of, or dissipating assets to avoid paying the bond claims or to avoid obligations under the indemnity agreement. *Id.* at 3.

In its brief, ALC does not dispute that it has a duty under the agreement to indemnify Allied for legitimate losses, but contends the relief requested—specific performance with respect to providing collateral security—is excessive and does not correspond with the actual potential liability from the bond claims. Also, it argues that Allied has failed to show a probability of success on the merits because ALC has raised the legitimate defenses of unclean hands and equitable estoppel.

## II. LAW

When evaluating whether to grant the extraordinary relief of a preliminary injunction, a district court should consider four factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc); *Roudachevski v. All-American Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011). A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on

the movant. *Roudachevski*, 648 F.3d at 701, 705 (8th Cir. 2011). The burden on a movant to demonstrate that a preliminary injunction is warranted is heavier when granting the preliminary injunction will in effect give the movant substantially the relief it would obtain after a trial on the merits. *Calvin Klein Cosmetics Corp. v. Lenox Lab.*, 815 F.2d 500, 503 (8th Cir. 1987).

No single factor is determinative, although the failure to demonstrate the threat of irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction. *See Adam-Mellang v. Apartment Search, Inc.,* 96 F.3d 297, 299 (8th Cir. 1996); *see also Modern Computer Sys., Inc. v. Modern Banking Sys.*, Inc., 871 F.2d 734, 738 (8th Cir. 1989) (en banc); *Roudachevski*, 648 F.3d at 706 (stating the threat of irreparable harm is a necessity in proving the propriety of preliminary injunctive relief). To succeed in demonstrating a threat of irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Id.* (quoting *Iowa Utils. Bd. v. Fed. Commc'ns Comm'n,* 109 F.3d 418, 425 (8th Cir. 1996)). "[A]n injury is 'irreparable' only if it cannot be undone through monetary remedies." *Snook v. Trust Co. of Ga. Bank of Savannah, N.A.*, 909 F.2d 480, 487 (11th Cir. 1990).

A showing of irreparable harm does not automatically mandate a ruling in the plaintiff's favor; the court must proceed to balance the harm to the defendant in granting the injunction. *Hill v. Xyquad, Inc.*, 939 F.2d 627, 630-31 (8th Cir. 1991). Also, although success on the merits has been referred to as the most important of the four factors, it is insufficient on its own. *Roudachevski*, 648 F.3d at 706.

5

Under Nebraska law, in order to recover in an action for breach of contract, the plaintiff must plead and prove the existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the defendant's duty. *Henriksen v. Gleason*, 643 N.W.2d 652, 658 (2002). To recover under a theory of *quia timet* or exoneration, a surety must establish that the debt is presently due (exoneration) or will come due (*quia timet*), that the principal is or will be liable for the debt, and, that absent equitable relief, the surety will be prejudiced because it will be forced to advance the money to the creditor. *In re Farmland Indus., Inc.*, 296 B.R. 793, 797 n.1 (B.A.P. 8th Cir. 2003).

Specific performance is an appropriate remedy only under certain circumstances. *Tierney v. Four H Land Co. Ltd. P'ship*, 852 N.W.2d 292, 298 (Neb. 2014). It may be granted only where there is a valid, legally enforceable contract, and the party seeking specific performance has substantially complied with the terms of that contract. *Id.* Also, "[t]here must be no adequate remedy at law for breach of the relevant contract." *Id* at 299.

There is some authority for the proposition that when a surety has demanded that a principal post collateral security and the principal refused, the legal remedy of damages is not adequate. *See Liberty Mut. Ins. Co. v. Aventura Eng'g & Const. Corp.*, 534 F. Supp. 2d 1290, 1321 (S.D. Fla. 2008) (stating "a surety's loss of its right to collateralization cannot be adequately remedied through monetary damages"); *Fid. & Deposit Co. v. D.M. Ward Constr. Co., Inc.*, No. 06–2483–CM, 2008 WL 2761314 at *2 (D. Kan. July 14, 2008) (same); *U.S. Sur. Co. v. Stevens Family Ltd. P'ship*, 905 F. Supp. 2d 854, 859 (N.D. Ill. 2012) (stating "[w]hile the breach of such a collateral

6

security provision cannot be rectified through the traditional legal remedy of monetary reimbursement (remember that a surety will not have suffered an actual loss at the point where collateralization, as opposed to reimbursement, is appropriate), California courts have employed the equitable remedy of specific performance to enable sureties to receive the benefit of their collateral-security bargains").

Numerous courts have granted summary judgment to sureties for specific performance of the collateral security obligation and required indemnitors to post collateral security. *See, e.g.*, *Am. Motorists Ins. Co. v. United Furnace Co.,* 876 F.2d 293, 302 (2d Cir.1989) (granting partial summary judgment on collateral security and ordering specific performance); *Safeco Ins. Co. of Am. v. Lake Asphalt Paving & Const., LLC*, 807 F. Supp. 2d 820, 827 (E.D. Mo. 2011) (ordering specific performance on a motion for summary judgment); *D.M. Ward Constr. Co., Inc.*, No. 06–2483–CM, 2008 WL 2761314 at *2 (ordering specific performance on a motion for partial summary judgment); *Emp'rs Mut. Cas. Co. v. JVV Consulting-Constr. Mgmt., L.L.C.*, No. 11-79-JJB, 2012 WL 1028607, at *4 (M.D. La. Mar. 26, 2012) (granting summary judgment and ordering specific performance of right to collateralization); *U.S. Fidelity & Guar. Co. v. Feibus*, 15 F. Supp. 2d 579, 588 (M.D. Pa. 1998) (finding defendants failed to raise an issue of material fact that would prevent the court from entering summary judgment on plaintiff's claim for specific performance); *Liberty Mut. Ins. Co. v. Nat'l Pers. of Texas, Inc.*, No. 3:02-CV-1341, 2004 WL 583531, at *2 (N.D. Tex. Mar. 24, 2004) (applying Texas law and entering summary judgment of specific performance).

A party's entitlement to specific performance is governed by state law, not the federal standards for granting injunctive relief under Rule 65 of the Federal Rules of

Civil Procedure. *Employers Mut. Cas. Co. v. Precision Const. & Maint., LLC*, No. 14-1420, 2015 WL 5254706, at *10 (E.D. La. Sept. 8, 2015) (noting that courts have repeatedly granted specific enforcement of collateral security provisions, as long as specific performance is available under state law). The equitable remedies of specific performance and preliminary injunction are distinct. *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) (noting absence of an adequate remedy at law is a precondition to any form of equitable relief, but such ultimate relief can easily wait until the end of trial, only if a movant "will suffer irreparable harm—that is, harm that cannot be prevented or fully rectified by the final judgment after trial—can he get a preliminary injunction.") A judgment on the merits is required prior to the issuance of a decree of specific performance, whereas "the issuance of a preliminary injunction is procedurally truncated, occurring prior to judgment on the merits, and, for that reason, it is an extraordinary remedy requiring both the absence of adequate remedy at law and the clear establishment of the burden of persuasion as to each of the four prerequisites." *Great Am. Ins. Co. v. Fountain Eng'g, Inc*, No. 15-CIV-10068-JLK, 2015 WL 6395283, at *2 (S.D. Fla. Oct. 22, 2015).

"While a surety need not sustain a loss from its own pocket before it can raise a claim demanding specific enforcement of an indemnity agreement, the fact that the claim exists does not establish irreparable injury for purposes of injunctive relief." *Ohio Cas. Ins. Co. v. Campbell's Siding & Windows*, No. 1:15-CV-00255-EJL, 2015 WL 6758137, at *3 (D. Idaho Nov. 4, 2015) (citation omitted) (finding surety's "motion only seeks injunctive relief to require the payment of collateral security which is an economic injury and not irreparable"); *see Travelers Cas. & Sur. Co. of America v. W.P. Rowland*

*Constructors Corp.*, No. CV-12-0390-PHX-FJM, 2012 WL 1718630, at *3 (D. Ariz. May 15, 2012) (denying injunctive relief of collateralization to a surety); *Hudson Insur. Co. v. Simmons Constr.*, LLC, No. CV12–407–PHX–GMS, 2012 WL 869383, at *4 (D. Ariz. March 14, 2012) (finding no authority for preliminary injunctive relief for collateralization); *Hanover Ins. Co. v. TLC Investing, LLC*, No. 2:11-CV-00711-JCM-LRL, 2011 WL 3841299, at *1 (D. Nev. Aug. 26, 2011) (denying reconsideration of a denial of preliminary injunction based on failure to show irreparable harm).

"Cases discussing preliminary injunctions have held that a preliminary injunction is warranted to enforce a surety's rights if the principal is insolvent or secreting assets." *Aventura Eng'g*, 534 F. Supp. 2d at 1321–22; *see also Travelers Cas. & Sur. Co. v. Ockerlund*, No. 04–C–3963, 2004 WL 1794915, at *5 (N.D. Ill. Aug. 6, 2004) (issuing preliminary injunction requiring indemnitor to post collateral in the absence of any defenses or any argument that the indemnity agreement was unenforceable). Courts granting preliminary injunctive relief under Federal Rule of Civil Procedure 65 generally require some showing of irreparable harm such as evidence that establishes that the indemnitor is in dire financial straits, no longer has a traditional source of credit, has been dishonest or "is millions of dollars in the hole with various creditors." *W. Sur. Co. v. Futurenet Grp., Inc.*, No. 16-CV-11055, 2016 WL 3180188, at *7 (E.D. Mich. June 8, 2016) (enjoining the indemnitors, after a hearing, from transferring or encumbering their assets, but not requiring them to post collateral); *Allied World Specialty Ins. Co. v. Lawson Inv. Grp., Inc.*, No. 6:15-CV-1397-Orl-37TBS, 2016 WL 695980, at *4 (M.D. Fla. Feb. 22, 2016) (granting motion for preliminary injunction on a finding that indemnitors

had filed or sought protection in bankruptcy court and assets were likely to be dissipated).

A showing that a surety is not likely to incur any damages beyond the economic cost of paying the bond claims prior to receiving collateral "'does not support a finding of irreparable harm, because such injury can be remedied by a damage award.'" *Travelers Cas. & Sur. Co. of Am. v. W.P. Rowland Constructors Corp.*, No. CV 12-00390-PHX-FJM, 2012 WL 1718630, at *3 (D. Ariz. May 15, 2012) (quoting *Rent–A–Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)).[2] A showing that a surety will suffer extreme or very serious damage that would justify a mandatory injunction requiring the deposit of collateral would include, for example, establishing that it does not possess sufficient funds to pay the bond claims or showing that the injury sustained by the indemnitor's failure to provide collateral is incapable of being compensated with money damages. *Id.* "'[T]he fact that plaintiff may, in the interim, be marginally less secure with respect to the availability of a final money judgment [or decree], does not constitute "irreparable harm" so as to warrant the extraordinary remedy of a preliminary injunction.'" *Great Am. Ins. Co. v. Fountain Eng'g, Inc.*, No. 15-CIV-10068-JLK, 2015 WL 6395283, at *3 (S.D. Fla. Oct. 22, 2015) (quoting *Firemen's Ins. Co. v. Keating*, 753 F. Supp. 1146, 1157 (S.D.N.Y. 1990)). The purpose of a collateral security clause is to provide sureties with access to financial cushioning

---

[2] Although the court denied the motion for preliminary injunction, it later granted the surety's motion for summary judgment and ordered specific performance in the form of payment of collateral under the indemnity agreement. *Travelers Cas. & Sur. Co. of Am. v. W.P. Rowland Constructors Corp.*, No. CV-12-0390-PHX-FJM, 2013 WL 2285204, at *3 (D. Ariz. May 22, 2013)

during the pendency of claims and, where violated, the surety suffers ongoing harm in the form of missing money, but, whatever the loss, whether to financial security or otherwise, it is monetary in character, and may be adequately remedied by a judgment on the merits. *Id.*

### III. DISCUSSION

The court finds, at this early stage of the proceedings, the plaintiff has not established that it is entitled to injunctive relief. Allied has not met the heavy burden it faces where, as here, granting the preliminary injunction will effectively give it substantially the relief it would obtain after a trial on the merits. At this juncture, Allied has not shown it will be irreparably harmed by denial of a injunctive relief. It has not shown that the defendants are insolvent or disposing of or secreting assets. Moreover, it concedes that it has not paid out any claims and is in the process of investigating the claims. Also, the defendant expresses some willingness to resolve the issues and fulfill its admitted obligations.

Allied conflates the requirement of an "inadequate remedy at law" for the purpose of an ultimate award of equitable relief with the required showing necessary for a preliminary injunction—a demonstration that if the injunction is not granted the movant is likely to suffer irreparable harm before a decision on the merits can be rendered. The fact that Allied may be ultimately be entitled, under Nebraska law, to the equitable remedy of specific performance after proving its case, does not mean that an order granting specific performance is appropriate or necessary at this time. Allied has not shown that it will be irreparably harmed if an injunction is not granted at this time. It has not established that it cannot be compensated for the indemnitor's failure to provide

collateral with money damages or with an order of specific performance after resolution of the merits.

In addition, although Allied has shown some probability of success on the merits of its claims, it has not presented evidence that clearly establishes its legal right to specific performance at this time. ALC has raised the defenses of equitable estoppel and unclean hands and challenges the validity of certain provisions of the indemnity agreement. Whether ALC's denials or defenses are valid is the ultimate issue in this case. The fact that sureties can be entitled to the specific performance of valid collateral security clauses does not mean the provision in this case is substantially likely to be valid or that ALC's defenses are insufficient as a matter of law. The cases that grant specific performance of a collateralization clause generally involve motions for summary judgment and a full development of the record. Defendants have raised issues of good faith and inequitable conduct, as well as a public policy argument, that deserve fuller consideration.

The court also finds the balance of harms favors ALC. It has presented unrefuted evidence that ALC's financial condition, ability to meet its ongoing financial obligations, and ability to perform the two presently uncompleted public construction projects would be put in jeopardy if an injunction were granted and it was required to deposit $400,000 in collateral security. In contrast, the harm to Allied is that it will lose the benefit of its bargain and will be required to expend its own funds to resolve the bond claims. Even conceding that the nature of the injury to a surety is the lack of collateralization while the claims are pending, Allied has not shown that such injury is certain and great and so imminent that there is a clear and present need for equitable

relief.³  It does not contend, nor has it shown, that it lacks sufficient funds to investigate or pay the bond claims or that the injury sustained by the indemnitor's failure to provide collateral cannot be compensated with money damages.

The public interest will also be furthered by a denial of preliminary injunctive relief at this stage of the proceedings.  Allied contends that the public interest will be served by seeing that contractual agreements between parties are upheld and by ensuring the continued solvency of sureties for the benefit of the public.  That may ultimately be true, but the public interest is not served by issuing the extraordinary relief of a preliminary injunction before discovery and without adequate development of an indemnitor's arguable defenses.  Accordingly, the court finds the motion for a preliminary injunction should be denied at this time, without prejudice to reassertion.

IT IS ORDERED:

1. The plaintiff's motion for a preliminary injunction ([Filing No. 2](Filing No. 2)) is denied, without prejudice to reassertion.

Dated this 24th day of April, 2017.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge

---

³ The cases cited by Allied as illustrative of their position on this issue, *Emp'rs Mut. Cas. Co.*, 2015 WL 5254706, at *10 and *Lake Asphalt Paving & Const., LLC*, 807 F. Supp. 2d at 827, did not involve motions for a preliminary injunction but, rather, specific performance of a surety's right to collateral security in the context of a motion for summary judgment.